OPINION
Teresa Carman is appealing from her conviction, following a jury trial in the Dayton Municipal Court, of criminal trespass under City of Dayton Ordinance Section 133.05. The criminal complaint filed against her states that on or about April 15, 1998, "she did unlawfully without privilege to do so, recklessly enter on the land or premises of another, to-wit: Zehler Hall at the University of Dayton as to which notice against unauthorized access or presence was given by actual communication to the offender." Docket 1.
Unfortunately, the record before us does not contain a transcript of the jury trial nor any of the exhibits. The parties agree that even after several months of searching, the transcript and all exhibits were lost.
Pursuant to App.R. 9(C), the appellant filed a Statement of the Evidence which she, with the assistance of counsel, had prepared. The City filed an objection stating that her proposed Statement of the Evidence did not contain all of the evidence presented at the trial. The court, however, filed an entry approving Carman's Statement of the Evidence and stated that "the Court finds Defendant's Statement of the Evidence to be accurate and correct, overrules Plaintiff's objections, and HEREBY APPROVES pursuant to App.R. 9(C), Defendant's Statement of the Evidence, filed in this court on February 5, 2000. The following is the entire Statement of the Evidence:
 1. Defendant graduated from the University of Dayton in 1990.
 2. On or about June 1, 1992, Defendant received written notice that her privilege to enter onto the property of the University of Dayton had been revoked. Plaintiff presented testimony that Plaintiff's Exhibit 1 is a copy of the notice delivered to Defendant. Defendant testified that she received a written notice similar to Plaintiff's Exhibit 1, and that the notice she received advised her that her privilege to enter the campus had been revoked. Defendant testified that the notice she received contained a statement of her right to appeal the trespass order and did not contain the statement, "This order can only be rescinded by the director of security in writing."
 3. Defendant appealed the trespass order by means of a letter submitted to John Delamar, Director of Public Safety. A copy of the letter was admitted as Defendant's Exhibit A.
 4. As a result of Defendant's written appeal, a hearing was held at which Defendant appeared and spoke with John Delamar and John Hart, Director of Legal Affairs and Counsel for the University of Dayton.
 5. Defendant testified that after, and as a result of, the meeting with Hart and Delamar she believed the trespass order would be rescinded. Neither Delamar nor Hart nor anyone else at the University sent Defendant a written decision on the disposition of her appeal.
 6. Defendant testified that over the subsequent years she continued to receive mailings from the University of Dayton, some of which were invitations to her to attend various functions on campus. Defendant further testified that over a period of years after 1992 she attended graduate school at Wright State University and, during the course of those studies, used the library at the University of Dayton on many occasions. She testified that during this period she obtained a library card from the University and a number of parking passes from the campus security department. Plaintiff presented no evidence to rebut or contradict the testimony described in this paragraph.
 7. Defendant testified that at no time during the period from 1992 until the incident in 1998 that led to the instant charge did she receive any further notice, warning or other indication which would lead her to believe that she was not allowed on campus.
 8. On or about April 15, 1998, Defendant testified that she was on campus using the library and that afterwards she went to Zehler Hall with the thought of speaking to Professor Mark Ensalaco. There was no contact between Defendant and Ensalaco at that time, but Ensalaco caused Defendant's presence on campus to be reported to the security office, and the instant charge of criminal trespass ensued.
 9. John Hart testified that he wrote a letter addressed to Defendant dated May 13, 1997 and that Plaintiff's Exhibit 2 is a copy of that letter. Neither Hart nor anyone else testified that he or she mailed the letter to Defendant. Neither Hart nor anyone else testified that there was a system in place in his office for mailing correspondence or that any system for mailing correspondence was followed at that or any other time.
 10. Defendant testified that she did not receive the letter identified as Plaintiff's Exhibit 2 and that she had no knowledge of it or its contents prior to these proceedings.
 11. Defendant objected to the admission of Plaintiff's Exhibit 2 over Defendant's objection.
 12. Plaintiff's Exhibit 1 and Defendant's Exhibit A were admitted without objection.
Carman presents the following two assignments of error:
 THE TRIAL COURT ERRED BY ADMITTING PLAINTIFF'S EXHIBIT 2 INTO EVIDENCE.
 THE TRIAL COURT ERRED BY OVERRULING DEFENDANT/APPELLANT'S MOTION FOR ACQUITTAL.
We find the second assignment meritorious, and the first assignment moot.
In light of the repeated invitations extended to Carman by the University of Dayton after the hearing on her appeal from the June 1, 1992, written notice to her that her privilege to enter onto the property of the University of Dayton had been revoked, and the lack of communication to her following the hearing, we do not see how any reasonable person could believe that Carman acted recklessly in walking from one part of the University campus to another part on the day in question. The Dayton Ordinance tracks the language of the State statute defining criminal trespass (Section 2911.21) and "recklessly" is defined as acting "with heedless indifference to the consequences" by "perversely" disregarding "a known risk that is likely to cause a certain result and is likely to be of a certain nature." Section 2901.22(C). Carman particularly would not have necessarily believed that she was still under an order to stay off the campus when the security department itself had issued her parking passes during the six years between the notice to stay off the campus and the incident of April 12, 1998.
The first assignment of error refers to a letter which is the subject of paragraphs 9, 10, and 11 of the Statement of the Evidence. It seems clear that no proper foundation was laid for admitting the letter into evidence, and the trial court erred in that respect. However, since the letter is not part of the record on appeal, and its purported contents are not set forth in the Statement of the Evidence, we give it no weight in our decision and find this assignment moot.
The second assignment of error is sustained, the first assignment is rendered moot, and the judgment is reversed. Carman's conviction and sentence are vacated.
WOLFF, P.J. and FAIN, J., concur.